## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

DOC NO
REC'D/FILED

GREGORY PATMYTHES
    Plaintiff,

2016 NOV -9 PM 12: 46

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

  vs.

COMPLAINT

Case No.

THE CITY OF MADISON
    Defendant.

**16 C 738** ~wmc~

**NOW COMES** the plaintiff, Gregory Patmythes, and for his complaint shows to the court as follows:

### INTRODUCTION

1. This is an action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101 et seq., and §504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 for discrimination on the basis of disability. Plaintiff claims that, based upon his disability of cystic fibrosis, defendant discriminated against Patmythes, resulting in loss of pay, benefits and career opportunities.

### JURISDICTION AND VENUE

2. Jurisdiction over plaintiff s claims is conferred upon this court pursuant to 28 U.S.C.A. §§1331 and 1343.

3. Venue in the United States District Court for the Western District of Wisconsin is appropriate under 28 U.S.C. §1391(b).

## PARTIES

4.   The plaintiff, Gregory Patmythes, is an adult citizen, residing at 3614 Stonebridge Dr.,
     City of Madison, Dane County, Wisconsin 53719.

5.   The defendant, the City of Madison, is a Wisconsin governmental entity, governing in
     Dane County, Wisconsin, whose principal city office is at 210 Martin Luther King Jr.
     Blvd., Madison, Wisconsin 53701.

6.   Relief is sought against defendant as well as its agents, assistants, successors,
     employees, and all persons acting in concert or cooperation with it or at its direction.

## FACTS

7.   I was diagnosed with cystic fibrosis in November of 1972, and at all relevant times
     hereto has suffered from cystic fibrosis.

8.   Cystic fibrosis is a disability recognized by federal, state and local laws.

9.   The average life expectancy of a cystic fibrosis patient is 39.3 years (2014 data)
     compared 78.5 years for a non-CF patient.

10.  Anxiety and depression are disabilities recognized by federal, state and local laws.

11.  On or about May 10, 2004, plaintiff was hired by defendant for the position of City
     Zoning Code Officer  and at all relevant times hereto was employed by the defendant in
     that position.

12.  I informed defendant of my diagnosis of cystic fibrosis in approximately
     October 2004.  I required time off from work to treat a pulmonary exacerbation.

13.  The Defendant has programs and services to increase the number of members of top
     management based on race and gender.

14.    Those programs and services are denied to me as a disabled employee.

15.    The city has a record of promoting employees prior to retirement in order to increase the benefit to the retiring employee.

16.    This benefit is unavailable to me.

17.    Because of the acts of a former member of top management (Bob D'Angelo) and the cover-up that allowed the acts to take place, Administrative Policy Memorandum 3-5: Prohibited Harassment (APM 3-5) was published and an ongoing citywide training plan implemented.

18.    APM 3-5 allows for verbal complaints or written complaints to be filed.

19.    The emphasis of the APM 3-5 training was how a remark, gesture or other was received without regard for intent.

20.    During my employment I have used FMLA, WIFMLA, paid leave, unpaid leave, and short-term disability insurance (a.k.a. wage insurance) due to my disability.

21.    Dickens harasses and discriminates against Patmythes due to his disability and serious medical condition.

22.    A single incident can be a pattern.

23.    Prior to a surgical leave Dickens displayed her bias against by discussing the matter with a colleague when I hear her state "There is no reason for him to be out 3 weeks."

24.    Dickens has stated "It's not fair that he doesn't have to use his vacation time prior to using wage insurance."

25.    On June 4, 2016 Dickens informs me that "You know you and _____ are a real pain in the ass" because my colleague and I use the benefits provided by the employer.

26.    Dickens also reveals the name of another employee that is using FMLA.

27.   June 4, 201 Patmythes complains verbally to Tucker, as permitted by city policy, APM 3-5. Tucker takes no action.

28.   June 5, 2016 Patmythes complains to Hank of the harassment and discrimination by Dickens.

29.   Hank instead of starting a hostile work environment investigation on the basis of disability interferes in the process by telling Dickens to create a record by e-mailing herself.

30.   In admission of wrongdoing, pursuant to the actions of Dickens on June 4, 2014, Sherry Severson conducts a training program for payroll clerks relating to confidential information.

31.   I made a plain English request for reasonable accommodation to Sherry Severson, Occupational Accommodations Specialist.

32.   The reasonable request was to transfer to a non-hostile work environment in an effort to alleviate cystic fibrosis, depression and anxiety.

33.   The  WFE, ADAAA and ADA require employers to provide reasonable accommodations to individuals with disabilities, including reassignment, even though they are not available to others. US Airways, Inc. v. Barnett, 535 U.S., 122 S. Ct. 1516, 1521, 1524 (2002).; see also Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1304-05, 8 AD Cas. (BNA) 1093, 1110-11 (D.C. Cir. 1998); United States v. Denver, 943 F. Supp. 1304, 1312, 6 AD Cas. (BNA) 245, 252 (D. Colo. 1996).

34.   Because on September 7, 2012 the Seventh Circuit Court of Appeals overturned *EEOC v. Humiston-Keeling*, 227 F.3d 1024 (7th Cir. 2000), in light of *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). *Gail King v. City of Madison* is **dead**

on arrival (DOA) and the findings in *Gail King v. City of Madison* are permanently muted.

35. Any policy, including APM 2-22 (dated January 19, 2010) derived from *Gail King v. City of Madison* is unlawful and unenforceable.

36. I timely and properly applied for an Investigator/Conciliator position in the Department of Civil Rights.

37. I was determined to be qualified for the position.

38. I interviewed for the position.

39. I was told by a member of the Mayor's staff, with the authority to speak on behalf of the mayor, said that "I didn't have the look" the city wants in the Investigator/Conciliator position.

40. Because no action was taken on my reasonable accommodation request of December 5, 2014 I believed the request was denied, without explanation.

41. On or about January 21, 2015, I submitted a new request to Severson for transfer.

42. Severson discourages asking for transfer because there may be hard feelings from other employees that may want the position(s) I am seeking reassignment to.

43. Gregory Leiffer, Labor Relations Manager, has the authority of the City when he speaks on the matter of benefits and benefits policies.

44. January 28, 2015 Gregory Leiffer, Labor Relations Manager, explains that persons with "bad genes" have a duty to avoid things that make their chronic conditions worse in the justification of an increase to health insurance premiums.

45. On or about February 25, 2015, believing an interview for the position of Project Manager was a result of a reasonable accommodation request, I mentioned it during the

interview.

46. On or about March 6, 2015 Project Manager recruitment is terminated by the city.

47. Position will be reclassified at a lower pay grade, which is contrary to past practice, especially in Engineering.

48. Previously Engineering hired J. Hoffman for an engineering position without meeting the required minimums in the posting.

49. I was denied the benefit of the policy/program/service based on gender that permits an applicant to fill a position.

50. The city also has an established history of "underfilling" positions, making positions "interim" or designating an employee as a "trainee."

51. I have been denied a privilege extended to other employees on the basis of disability and gender.

52. Failure to act on previous reasonable accommodation requests results in the denial of the request without the required explanation.

53. On or about March 27, 2015 City admits that hiring processes are in need of reform in the wake of claims of systemic racism at Madison Metro. Reforms that discriminate against Patmythes on the basis of disability and race.

54. March 31, 2015 Patmythes competitively interviews for Police Records Supervisor. During the portion of the interview designated for candidate questions, the panel (Fichtel, Gloede, Kujak) refuses to answer routine and ordinary questions posed by Patmythes. On the basis of disability, gender and race Patmythes is discriminated against in both the hiring process and the inaction of the city on previously submitted reasonable accommodation requests.

55.    April 1, 2015 Patmythes properly and timely files and cross files complaints with the

        Wisconsin Department of Workforce Development Equal Rights Division (ERD) and

        Equal Employment Opportunity Commission (EEOC) regarding the events of June 4,

        2014 and subsequent events.

56.    The City of Madison has a work sharing agreement with the ERD.

57.    April 15, 2015 ERD instructs the city to respond within 45 days, which is May 30,

        2015.

58.    May 28, 2015 on or about I submitted a second letter to Severson from mental health

        provider regarding reasonable accommodations. To date no action has been taken on

        the request.

59.    May 30, 2015 the City misses their deadline for responding to the timely and proper

        complaint filed with the ERD.

60.    Because of the intimate relationship the ERD has with the City resulting from the work

        sharing agreement, an extension of one week was granted.

61.    June 6, 2015 is the extended deadline for the City to respond to the complaint.

62.    June 9, 2015 as of a 9:30 a.m. phone call with Kasper at ERD the response remains

        absent.

63.    June 9, 2015 Stenson on behalf of the City announces Women's Leadership Series to

        increase representation of women in highest levels of leadership.

64.    This series consists of 40 hours of training and is open only to women. Thereby

        discriminating against me on the basis of disability and gender.

65.    This is admission of guilt that the city has a history of discriminatory practices,

        including hiring and promotion.

66.   June 12, 2015 I timely and properly file a written objection with ERD objecting to the acceptance of the untimely response by the City.

67.   The response as to why my reasonable accommodation requests were denied is pretextual.

68.   The response is contrary to the expert opinion of my care providers.

69.   The response has no foundation in fact because time sheets and e-mail records prove that a substantial portion (approximately 5 hours) of my 7.75 hour workday is spent in the office. Contradicting the mendacity of a substantial portion of my day being spent performing inspections.

70.   I submitted proof, in accordance with the rules of evidence, to the ERD investigator that the city was lying.

71.   The "work sharing" agreement between the City of Madison Department of Civil Rights and the State of Wisconsin Department of Workforce Development Equal Rights Division causes a conflict of interest.

## CAUSES OF ACTION

72.   The actions of the defendant, as described in paragraphs 1-71 constitute a violation of the ADA, 42 U.S.C. §§12101 et seq., and §504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 in that the defendant, because of plaintiff s disability, deliberately and intentionally eliminated only plaintiffs position of employment.

73.   At all times relevant hereto, plaintiff was qualified for employment in the Building Inspection Unit and was qualified for other city employment with or without additional training in that he was capable of performing the essential functions of the job with or without reasonable accommodations.

74. At all times relevant hereto, plaintiff performed his job duties to defendant's legitimate satisfaction.

75. Upon information and belief, at all times relevant hereto, plaintiff was qualified for employment in other positions throughout the City of Madison.

76. At all times relevant hereto, plaintiff was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C.A. §12111(8) in that he has a physical impairment that substantially limited one or more of his major life activities, and/or that he was

regarded as having such impairment by defendant, based upon the diagnosis of cystic fibrosis.

77. Defendant intentionally discriminated against plaintiff by refusing to transfer and/or him to a different position for which he was qualified because defendant regarded plaintiff as disabled and/or because plaintiff had a physical impairment, in violation of the ADA, 42 U.S.C.A §12112(a).

78. As a direct result of said intentional and discriminatory conduct, plaintiff has lost wages and other benefits, he has suffered emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life, and he has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

79. Plaintiff has been damaged by the City of Madison's violation of the ADA, inasmuch as plaintiff:

    a. loss of pay, benefits and seniority;

    b. has not found a position of employment with comparable pay; and

    c. has suffered emotional damages, mental anguish, loss of enjoyment of life

and other non-pecuniary damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendant as follows:

(1) A declaratory judgment that the elimination of plaintiff s position was in violation of the ADA.

(2) A declaratory judgment that the layoff of plaintiff was in violation of the ADA.

(3) For compensatory damages in an amount to be proven at trial, for mental and emotional distress, impairment of reputation, personal humiliation, and loss of enjoyment of life.

(4) For financial damages in an amount to be proven at trial.

(5) For an award of pre-judgment and post-judgment interest, together with costs, expert witness fees and reasonable attorneys' fees.

(6) For punitive damages.

(7) For such other relief that this court may deem just, equitable and proper. Plaintiff hereby demands a TRIAL BY JURY.

Dated at Madison, Wisconsin this 9th day of November, 2016.

GREGORY PATMYTHES

ADDRESS
3614 Stonebridge Dr.
Madison, WI 53719